UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD CAMARGO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23-cv-02589 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| ABBVIE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Edward Camargo, Judith Mandel, Simone Nazareth, and Bonnie Goltz filed a 32-count putative class action complaint alleging that Defendant AbbVie, Inc. violated a host of state consumer protection statutes, including the Illinois Consumer Fraud and Deceptive Business Practices Act, in connection with its pricing of Humira, the "largest selling prescription drug in the world." *See* [28]. AbbVie moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [34], [35].

For the reasons set forth below, this Court grants Defendant's motion.

## I. The Complaint's Allegations

Plaintiffs, on behalf of themselves and a putative class, sue AbbVie for "the unfair and unconscionable practices that have led to the inflation of Humira's list (or point of sale) price in the United States." [28] ¶ 1. According to Plaintiffs, Humira, is "indicated for autoimmune, rheumatologic, and gastrointestinal disease," and remains "the largest selling prescription drug in the world"; yet the price of Humira, which has reached "more than $72,000 a year," has "defied gravity," pricing many

patients out of the market, despite their prescriptions. *Id.*

Plaintiff Camargo, a resident of Indiana who suffers from psoriatic arthritis and psoriasis, took Humira from roughly 2013 to 2018 but stopped taking it when he turned 26 and rolled off his father's insurance; he alleges that, without insurance, he was unable to afford the medication, which really helped him. [28] ¶¶ 18–22. Similarly, Plaintiff Bonnie Goltz, a Michigan resident afflicted with rheumatoid arthritis, took Humira as prescribed from April 2017 until September 2022, when she retired, changed insurance plans, and could no longer afford it (under her retiree insurance plan, Humira would have cost approximately $3,800 per month). *Id.* ¶¶ 28–30. Both Goltz and Camargo allege that, but for the price, they would still be on Humira. *Id.* ¶¶ 22–30.

Plaintiff Judith Mandel, a Connecticut resident, took Humira from 2011 to 2020, when she developed an allergic reaction to the medication and stopped using it. In the last year that she took the medication, she was on a new insurance plan that required her to pay a much higher price for Humira. *Id.* ¶¶ 23–25. Plaintiff Simone Nazareth, a California resident who also suffers from rheumatoid arthritis, took Humira from 2015 until some unspecified time, when she transitioned to Amjevita, a biosimilar, to save money. *Id.* ¶¶ 26–27.

With regard to the price of Humira, Plaintiffs claim that AbbVie "joined with the largest pharmacy benefit managers (PBMs)—CVS Health, Express Scripts, and OptumRX—to widen a secret spread between AbbVie's published listed prices and the undisclosed net selling prices for Humira." *Id.* ¶ 2. "AbbVie artificially inflates

the prices it publicly reports—its list or 'sticker' price" which "then creates room for massive, undisclosed kickbacks—or 'rebates'—to the PBMs in exchange for preferred formulary access." *Id.* ¶ 3. The scheme results in consumers having to pay for Humira at the inflated "list prices," rather than the "competitive net prices offered to some intermediaries in the pharmaceutical supply chain." *Id.* ¶ 4. The list prices, Plaintiffs allege, remain untethered to "production costs, the recoupment of research and development costs, or the cost of other consumer goods," imposing "out-of-pocket costs" consumers can only avoid if they elect not to take Humira, as prescribed. *Id.* ¶ 5.

Plaintiffs allege that AbbVie has raised the price of Humira 27 times since 2003, when it came on the market, from a launch price of approximately $12,000/year, to about $24,000/year by the end of 2012, and to a 2023 price of about $84,000/year. [28] ¶¶ 93–97. More broadly, Plaintiffs allege that drug companies' pricing practices, including those of AbbVie, have "enriched company executives and shareholders," while leaving "millions of Americans unable to afford lifesaving medications." *Id.* ¶ 11. They allege that AbbVie's pricing practices have caused them to pay inflated out-of-pocket prices or caused them actual damages, including physical suffering, because, unable to afford Humira, they took some other, inferior drug. *Id.* ¶ 14. Plaintiffs allege that AbbVie violated various state consumer protection laws by "publishing arbitrary, inflated list prices for Humira while secretly paying rebates to certain PBMs to buy formulary access." *Id.* ¶ 17.

Plaintiffs seek to sue on behalf of "all individual persons in the United States

and its territories who: (1) paid any portion of the purchase price for a prescription of Humira at a price calculated by reference to a list price, AWP (Average Wholesale Price), and/or WAC (Wholesale Acquisition Price) for purposes other than resale, or (2) stopped taking prescription Humira after they lost insurance coverage because they would have had to pay any portion of the purchase price for a prescription of Humira at a price calculated by reference to a list price, AWP (Average Wholesale Price), and/or WAC (Wholesale Acquisition Price) for purposes other than resale." *Id.* ¶ 129.

Specifically, Plaintiffs claim that AbbVie's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Counts 1 and 12), as well as the analogous statutes in most states: Alaska (Count 2), Arizona (Count 3), California (Counts 4–5); Colorado (Count 6), Connecticut (Count 7), Delaware (Count 8), Florida (Count 9), Hawaii (Count 10), Idaho (Count 11), Kansas (Count 13), Louisiana (Count 14), Maryland (Count 15), Missouri (Count 16), Montana (Count 17), Nebraska (Count 18), New Hampshire (Count 19), New Jersey (Count 20), North Carolina (Count 21), North Dakota (Count 22), Oklahoma (Count 23), Pennsylvania (Count 24), Rhode Island (Count 25), South Carolina (Count 26), Tennessee (Count 27), Texas (Count 28), Utah (Count 29), Vermont (Count 30), Washington (Count 31), and Wyoming (Count 32). [28] ¶¶ 142–394. Plaintiffs fail to specifically identify the conduct they say violates the consumer fraud statutes. But, for all the allegations about dealings with the PBMs, the crux of their allegations appears to be that AbbVie charged unconscionably high prices to consumers who had to pay out-of-pocket for all

4

or part of their Humira prescriptions.

AbbVie moves to dismiss all claims for failure to state a claim under Rule 12(b)(6), *see* [34].

## II.    Applicable Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Rule 8 requires that the complaint contain "a short and plain statement" with "sufficient factual matter" to "state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 663, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim is plausible on its face under Rule 8 when it "allows the court to draw the reasonable inference" that the "defendant is liable for the conduct alleged." *Iqbal*, 556 U.S. at 678.

The standard is different for claims sounding in fraud, however; claims sounding in fraud must comply with the heightened pleading standard set forth in Rule 9(b).  *See, e.g., Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (finding Rule 9(b) requires pleadings to contain a level of specificity that is not typically required by federal judges when evaluating the sufficiency of a complaint).   Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The plaintiff must "allege the who, what, where, when of the alleged fraud," with the goal of ensuring the plaintiff completed an "investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.2d 467, 469 (7th Cir. 1999).

Here, the record contains conflicting indications as to whether Plaintiffs' claims sound in fraud. On the one hand, Plaintiffs include numerous allegations about AbbVie's dealings with PBMs, which suggest Plaintiffs may be trying to allege fraud, in which case Rule 9(b)'s heightened pleading standard would apply. On the other hand, their claims speak to AbbVie's pricing strategies simply in terms of the end result to consumers, alleging that AbbVie's pricing decisions required some consumers (those with no insurance or with insurance that requires insureds to pay some or all of the list price of Humira) to pay oppressively high prices, which might not implicate fraud. In its motion, AbbVie assumes the claims remain subject to Rule 8's more lenient standard, and Plaintiffs do nothing to disabuse them of that assumption in their response. As such, this Court applies Rule 8.

In considering a Rule 12(b)(6) motion, this Court also accepts all well-pled facts as true and draws all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court need not credit allegations resting solely upon "labels and conclusions"; nor does it accept legal conclusions as true. *Twombly*, 550 U.S. at 555. Additionally, when ruling, the Court remains limited to the four corners of the complaint, though it may consider documents attached to a defendant's motion to dismiss if they are referenced in the complaint and are central to the case. *Hecker v. Deer & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).

## III.  Analysis

AbbVie moves to dismiss Plaintiffs' ICFA claims, as well as the claims asserted under the other states' analogous statutes, for failure to state a claim. AbbVie also

argues that Plaintiffs' claims remain preempted under patent law. The Court considers the parties' arguments below.

## A.     Plaintiffs' ICFA Claims

In Count 1, Plaintiffs allege that AbbVie's pricing strategy constitutes an unfair act and practice that caused them to sustain actual damages by paying unfair and unconscionable out-of-pocket payments for Humira. They repeat those allegations in Count 12 and seek an order enjoining AbbVie's unfair acts and practices. AbbVie moves to dismiss on several grounds, as discussed below.

### 1.     The Effect of Plaintiffs' Non-Resident Status

AbbVie first argues that Plaintiffs' ICFA claims should be dismissed because Plaintiffs are non-Illinois residents, and their claims lack a substantial connection to Illinois. In *Avery v. State Farm Mut. Auto. Ins. Co.*, the Illinois Supreme Court held that the ICFA has no "extraterritorial effect"; it does not "apply to fraudulent transactions which take place outside Illinois." 835 N.E.2d 801, 853 (Ill. 2005). In deciding whether a transaction takes place in Illinois or outside of Illinois, the courts ask whether "the circumstances relating to the transaction occur primarily and substantially within that state"; in this regard, as Plaintiffs argue, "the place where a company policy is created or where a form document is drafted may be a relevant factor to consider in determining the location of a consumer transaction." *Id.* at 853–54.

*Avery* involved a challenge to State Farm's claims handling process; the court held that, although the challenged policy was conceived and implemented in Illinois,

the plaintiff resided in Louisiana, his car was kept there, his accident occurred there, his estimate was written there and he received his allegedly inferior parts there, and the alleged deception—the failure to disclose the inferiority of the replacement parts—also occurred in Louisiana. *Id.* at 854. As a result, the court held, the disputed transactions occurred outside Illinois and the out-of-state plaintiffs thus had no cognizable claim under the ICFA.

The same result obtains here. Although Plaintiffs allege that AbbVie conceived and implemented its pricing strategy in Illinois, Plaintiffs all reside outside Illinois, and they all secured prescriptions outside Illinois, filled those prescriptions outside Illinois, paid the allegedly oppressive, unfair prices outside Illinois, and decided whether and when to seek alternative medications outside Illinois. Plaintiffs do not allege that they had any contact with AbbVie in Illinois or that they otherwise engaged with the company concerning its pricing strategy. Their claims, like those at issue in *Avery*, occurred outside Illinois. As a result, Plaintiffs have no cognizable cause of action under the ICFA, and the Court thus grants AbbVie's motion to dismiss the ICFA claims, Counts 1 and 12.

## 2. Damages

To state an ICFA claim, under 815 Ill. Comp. Stat. 505/2, a plaintiff must show: (1) the defendant acted deceptively; (2) the defendant intended for the plaintiff to rely upon the deception; (3) the deception was involved in conduct of trade or commerce; and (4) resulted in actual damage to the plaintiff that was; (5) proximately caused by the deceptive act. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009).

Among other things, AbbVie argues that Plaintiffs' ICFA claims fail because some of the named Plaintiffs cannot allege damages. The named Plaintiffs allege different reasons for discontinuing their use of Humira: Mandel stopped because of an allergic reaction; Nazareth stopped because she found a cheaper biosimilar; Camargo stopped because he rolled off his parents' insurance and could not afford the higher out-of-pocket costs required by his new insurer; and Goltz took Humira as prescribed until she retired and changed insurance plans that required her to pay a higher out-of-pocket price for Humira. In light of these allegations, AbbVie argues that Plaintiffs Camargo and Goltz's claims should be dismissed for the independent reasons that they have no viable theory of causation or damages.

A plaintiff must establish "actual damages" for an ICFA claim. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). *See also Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) ("To bring a private right of action under the ICFA, actual damage to the plaintiff must be alleged."). To plead actual damages, a plaintiff must allege "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Such actual loss occurs "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197–98 (Ill. Ct. App. 2008)).

Neither Camargo nor Goltz alleges that Humira was in any way defective or worth less than what they actually paid. Indeed, Camargo alleges that Humira was

9

the only medication that really resolved his medical issues, suggesting that his subjective evaluation of the product should be higher still. Nor have Plaintiffs alleged that, but for AbbVie's conduct, they could have shopped around and obtained a better price in the marketplace. *See Kim*, 598 F.3d at 366. Indeed, the allegations relating to Camargo appear to suggest that he never even paid the allegedly high price. The failure to allege damages (and damages caused by AbbVie) provides an additional basis to dismiss the ICFA claims asserted by Camargo and Goltz.

### 3.     The Timeliness of Camargo's Claim

With respect to Plaintiff Camargo, AbbVie also argues that the statute of limitations provides yet another basis for dismissal. The statute of limitations under the ICFA is three years, and an ICFA claim accrues "on the date a plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Weston v. DB Priv. Wealth Mortg., Ltd.*, No. 22 CV 6139, 2023 WL 4864995, at *5 (N.D. Ill. July 31, 2023) (citing *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 441 (7th Cir. 1994)). Additionally, because the statute of limitations constitutes an affirmative defense, dismissal on this basis remains appropriate only if the allegations reveal that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010); *Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d 620, 644 (N.D. Ill. 2023).

Camargo alleges that he used Humira from approximately 2013 to 2018, while covered under his father's insurance, but he paid for the medication himself. [28] ¶ 18. He then alleges that he quit taking the medication because his new insurance

10

refused to pay for it, and he could not afford the "price for uninsured patients or its cash price." *Id.* ¶ 19. To the extent Camargo claims the price he paid while on his father's insurance constituted an oppressively high price, he last paid that in 2018, and his claims would thus have expired before Plaintiffs filed this lawsuit in April of 2023. Additionally, to the extent he claims the list price charged once he rolled off his father's insurance is the oppressively high price, Camargo's allegations indicate that he never paid that price (and thus cannot allege actual damages).

Plaintiffs include in their complaint allegations concerning the discovery rule and the resulting tolling of the applicable statutes of limitations. *See* [28] ¶¶ 116–23. But since they are claiming that the unfair act constitutes charging oppressive and unconscionable prices, as AbbVie correctly notes, those prices were apparent when Plaintiffs paid for the medication, even if Plaintiffs did not know the strategy behind the prices.[1] Accordingly, the Court rejects Plaintiffs' argument that the discovery rule would save Camargo's claims.

### B. Plaintiffs' Claims Under Other States' Statutes

As noted above, in addition to asserting claims under Illinois' Consumer Fraud and Deceptive Business Practices Act, Plaintiffs assert similar claims under 29 other states' analogous statutes. AbbVie seeks to dismiss all of these claims, arguing that the only causes of action cognizable to the named Plaintiffs are those asserted under their home states' relevant statutes: Indiana (Camargo); Michigan (Goltz); Connecticut (Mandel); and California (Nazareth). And the complaint does not assert

---

[1] Additionally, as noted, Plaintiff Camargo never paid the oppressive price.

11

claims under Indiana or Michigan law, which leaves Camargo and Goltz with no feasible claims. AbbVie also argues that the claims asserted under the Connecticut and California statutes fail as a matter of law.

Plaintiffs fail to address the territoriality point except with regard to Illinois (as discussed above); nor do they defend their claims under any states' ICFA-analogous statutes except for those in Connecticut and California, *see* [55] at 15–21.[2] The Court thus focuses its analysis on these states' laws.

### 1. California's UCL and the CLRA

In Count 4, Plaintiffs claim AbbVie's conduct with respect to Humira constitutes an unfair act and practice in violation of the California Legal Remedies Act, which "prohibits unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." [28] ¶¶ 172–79. Relatedly, in Count 5, Plaintiffs allege that AbbVie's conduct violated the California Business and Professions Code, which prohibits "unlawful, unfair, or fraudulent business acts or practices." *Id.* ¶¶ 180–87. Plaintiff Simone Nazareth, the only named California resident, took Humira for her rheumatoid arthritis beginning in 2015. [28] ¶ 26. At that time, Ms. Nazareth's

---

[2] By failing to respond, Plaintiffs have waived any argument that Plaintiffs can feasibly sue under non-resident statutes (except Illinois). *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."). To be sure, however, the application of the Connecticut and California statutes, as with the ICFA, remains tethered to the place where Plaintiffs' alleged injury occurred. *See Milteer v. Gabrielle,* No. FSTCV186038482S, 2021 WL 4125808, at *3 (Conn. Super. Ct. Aug. 19, 2021) (whether CUTPA applies depends on whether the alleged unfair or deceptive acts or practices in the conduct of any trade or commerce, as defined under General Statutes § 42-110a(4), occurred in Connecticut; *Speyer v. Avis Rent a Car Sys., Inc.,* 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005), aff'd, 242 F. App'x 474 (9th Cir. 2007) (observing that California's Unfair Competition Law would only apply to injuries occurring within the state).

insurance required her to pay a percentage of Humira's allegedly unconscionably high, inflated list price, and she thus spent thousands on the medication. *Id.* ¶ 27. At some point, Ms. Nazareth stopped using Humira and transitioned to Amjevita, a biosimilar. *Id.*

Plaintiffs' allegations fail to state a claim under either asserted California statute. California's Unfair Competition Act, Bus. & Prof. Code, § 17200 et seq., protects "both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 690 (Cal. Ct. App. 2010). The "UCL does not proscribe specific acts, but broadly prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Id.* (citing Bus. & Prof. Code, § 17200). Plaintiffs do not allege any unfair, deceptive, untrue, or misleading advertising; nor do they allege that AbbVie's conduct is unlawful or fraudulent. Instead, they allege that AbbVie's conduct is unfair, which means they must "show the conduct 'threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Id.* at 696 (2010) (quoting *Byars v. SCME Mortgage Bankers, Inc.*, 135 Cal.Rptr.2d 796 (Cal. Ct. App. 2003); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999)). Their allegations here, however, do not plausibly suggest any antitrust violation or any harm to competition, whether in fact or in spirit. Indeed, the complaint demonstrates the existence of alternatives and biosimilars,

which at least some of the named Plaintiffs elected to pursue.

Nor do Plaintiffs' allegations state a claim under the CLRA, which provides a cause of action to consumers who have suffered damages "as a result of an unlawful act." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1111 (N.D. Cal. 2016). Although Plaintiffs certainly allege that AbbVie prioritized corporate profits over the public good, they do not allege any unlawful act by AbbVie.

## 2. Connecticut's Unfair Trade Practices Act

In Count 7, Plaintiffs allege that "AbbVie's conduct with respect to Humira is 'unfair' in violation of" the Connecticut Unfair Trade Practices Act." [28] ¶¶ 197–205. Plaintiff Judith Mandel (the only named Connecticut resident) took Humira from 2011 to 2020, when she developed an allergic reaction to the medication and stopped using it. [28] ¶¶ 23–25. From 2011 through 2019, she "purchased Humira under her private insurance plan paying copayments"; but in 2019, she "switched to a Medicare Advantage health plan with prescription drug coverage," which required her to pay "a varying percentage of Humira's list price (depending on the stage of coverage)." *Id.* ¶ 24. She alleges that, "because of Humira's inflated list price" she paid "approximately $2,500 to fill just her two Humira prescriptions of the year" and then paid "hundreds out-of-pocket every month to acquire the drug." *Id.* In 2020, she spent "almost $9,000 out-of-pocket for Humira." *Id.* ¶ 25.[3]

Plaintiffs' allegations fail to plausibly allege that AbbVie engaged in an unfair business practice under the Connecticut Unfair Trade Practices Act (CUTPA). A

---

[3] Generally, the complaint alleges that AbbVie created inflated list prices that resulted in consumers having to pay unconscionably high, oppressive prices for Humira.

"trade practice is unfair under CUTPA if it (1) falls within 'the penumbra of some common law, statutory, or other established concept of unfairness,' (2) is 'immoral, unethical, oppressive, or unscrupulous,' or (3) 'causes substantial injury to consumers.'" *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 101–02 (2d Cir. 2019) (quoting *Votto v. Am. Car Rental, Inc.*, 871 A.2d 981, 984–85 (Conn. 2005)). "The 'substantial injury to consumers' prong covers conduct that is 'substantial,' is not 'outweighed by any countervailing benefits,' and causes 'an injury that consumers themselves could not reasonably have avoided.'" *Id.* (quoting *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 77 (Conn. 1990)). The complaint shows that Mandel in fact avoided paying Humira's high prices, initially by subscribing to an insurance plan that paid for Humira and later by quitting the medication. But, in any event, charging consumers high prices, by itself, does not violate the CUTPA under the relevant case law.

In *Richards*, the plaintiff argued that the defendants' conduct—luring customers with teaser rates and then gouging them with unconscionably high rates—constituted an unfair business practice that violated the CUTPA; the court disagreed, noting that "charging high prices does not on its own give rise to a CUTPA violation." *Id.* at 103 (citing *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 566 F.Supp.2d 81, 105 (D. Conn. 2008)). Richards alleged sneaky, but disclosed, high prices and nothing more; so too here.[4]

---

[4] In addition to failing to state a claim under Connecticut or California law, Plaintiffs' allegations suggest that Nazareth and Mandel's claims may also be barred by the applicable statutes of limitations. Although the complaint does not say exactly when Nazareth stopped taking (and paying for) Humira, if she did so before April 25, 2020, her claim under the CLRA would be barred, and if she

The plaintiff in *Richards* also alleged that the defendant's variable rate, which kicked in after the teaser rate expired, was not tied to "business and market conditions," and was thus unfair within the context of the CUTPA. The allegation is similar to Plaintiffs' allegation here that Humira's price increases were predicated at least in part by their secret PBM rebates, untethered to the drug's net prices. *See* [28] ¶¶ 3, 89–91, 139.[5] The Second Circuit rejected this claim too: after finding that the crux of the claim was that the defendant set variable rates in an unfair manner by not tying them to business and market conditions, the court held that the conduct might give rise to a breach of contract claim if defendant had contractually agreed to tie its rates to those criteria, but did not constitute a violation of the CUTPA. 915 F.3d at 102–04. The same is true here: nothing in the CUTPA requires Defendant to tether its prices to specific factors or to disclose those specific factors; Defendant disclosed the prices and Plaintiffs paid the disclosed prices. The claim for violation of the CUTPA thus fails.

---

stopped before April 25, 2019, her claim under the California UCL would also be barred. *See Hirsch v. BHS Home Appliances Corp.*, No. SACV2101355CJCDFMX, 2022 WL 4596692, at *8 (C.D. Cal. July 21, 2022) ("The statute of limitations for a claim under California's Legal Remedies Act is three years" and the "statute of limitations for California's Unfair Competition Law is four years."); *Frison v. Accredited Home Lenders, Inc.*, No. 10 CV 777 JM (WVG), 2010 WL 11684808, at *1 (S.D. Cal. July 6, 2010) ("California Business and Professions Code section 17200 has a four-year statute of limitations.") (citing Cal. Bus. & Prof. Code § 17208). Mandel's claim may also be time-barred, if she stopped taking (and paying for Humira) before April 25, 2020. *See Bellemare v. Wachovia Mortg. Corp.*, 894 A.2d 335, 344 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007) (a three-year statute of limitations applies to all claims brought under CUTPA without regard to the nature of the underlying unfair trade practice that has been alleged). Because Plaintiffs' allegations do not show definitively that the claims are barred, dismissal based upon the statutes of limitations remains inappropriate. If Plaintiffs elect to replead, however, they should remain mindful of their obligations under Fed. R. Civ. P. 11.

[5] Although Plaintiffs specifically mention rebates in connection with some counts, e.g. [28] ¶¶ 320–28 (Count 23 – violation of the Oklahoma Consumer Protection Act); ¶¶ 343–351 (Count 26 – violation of the South Carolina Unfair Trade Practices Act), they do not specifically mention them in connection with the claims for violation of the California and Connecticut statutes. The Court mentions rebates here in an abundance of caution.

16

For these reasons, the Court finds that Plaintiffs have failed to state claims under the California and Connecticut unfair business practices statutes, just as they failed to state claims under the ICFA.

## C.     Patent Law Pre-emption

Lastly, AbbVie argues that Plaintiffs' claims, premised upon AbbVie's allegedly oppressively, immorally high pricing strategies for Humira, remain preempted by patent law. AbbVie argues that the asserted claims implicate patent law because AbbVie holds the rights to United States Patent No. 9,085,619 B2, entitled "Anti-TNF Antibody Formulations," which issued July 21, 2015 and remains set to expire on November 28, 2028. *See* [36] ¶ 2; [36-1].[6]

In *Biotechnology Indus. Org. v. D.C.*, 496 F.3d 1362 (Fed. Cir. 2007), the D.C. City Council passed an ordinance prohibiting "any patented drug from being sold in the District for an excessive price" and allowing any affected party to sue for relief; two industry organizations whose members included manufacturers of patented pharmaceuticals challenged the statute, and the district court found that the legislation "did not square with the congressional purpose and objectives of the patent laws," including the purpose and objective of encouraging and rewarding "the

---

[6] On a motion to dismiss, courts generally limit their review to the four corners of the complaint; a court may, however, consider documents attached to the motion if the complaint refers to them and if they are central to the asserted claims, *e.g., Dowding v. Nationwide Mut. Ins. Co.,* 490 F. Supp. 3d 1291, 1295 (N.D. Ill. 2020). The Court can also take judicial notice of matters of public record, including patents. *E.g., Fosnight v. Jones,* 41 F.4th 916, 922 (7th Cir. 2022); *Midwest Innovative Prod., LLC v. Kinamor, Inc.,* No. 16 CV 11005, 2017 WL 2362571, at *2 (N.D. Ill. May 31, 2017) (citing *Anderson v. Kimberly-Clark Corp.,* 570 Fed.Appx. 927, 932 n.4 (Fed. Cir. 2014)). Although Plaintiffs do not mention AbbVie's patent in their complaint, their claims remain premised upon the price AbbVie sets for the drug, which is directly tied to the rights granted by the issuance of the patent, and the patent thus remains central to Plaintiffs' claims.

innovation, research, and development of new drugs." 496 F.3d at 1366.

On appeal, the Federal Circuit agreed, noting that, although the patent statute contains "no express provision that prohibits states from regulating the price of patented goods," "state law must yield to congressional enactments if it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 1372 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The court held that, "by penalizing high prices—and thus limiting the full exercise of the exclusionary power that derives from a patent," the D.C. act stood "as an obstacle to the federal patent law's balance of objectives as established by Congress" and was thus "preempted by federal patent law." *Id.* at 1374.

As a general proposition, the ICFA certainly does not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." But to the extent Plaintiffs seek to use the statute to "penalize high prices" and "limit the full exercise of the exclusionary power that derives from" AbbVie's Humira patents, under *Biotechnology Indus. Org. v. D.C.,* such claims would be ostensibly preempted by federal patent law.

In response to AbbVie's preemption argument, Plaintiffs cite *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, where the court held that the plaintiffs' claims were not preempted. 336 F. Supp. 3d 1256, 1334 (D. Kan. 2018). Although not binding, the case is instructive. There, the plaintiffs alleged that the defendants (including the patentholder) "maintained a monopoly over the EpiPen market and its profitable revenues by devising an illegal scheme to

monopolize the market for EAI (epinephrine auto-injector) devices"; they alleged that defendants paid PBMs to exclude competition and they exploited their market power to raise the EpiPen's prices. *Id.* at 1277–78. The plaintiffs further alleged that the defendants spread false and misleading information and omitted material information as part of their scheme to monopolize the EAI market, *id.* at 1283. They also alleged that the defendants committed various deceptive acts—namely, they made several misrepresentations as part of their scheme to monopolize the EAI market and charge consumers inflated prices for the EpiPen, including spreading misinformation and making misleading statements about competitors and making false claims about the prices consumers paid for EpiPens, *id.* at 1335. The plaintiffs also alleged that the defendants violated the antitrust and RICO laws by implementing a fraudulent scheme to monopolize the market and force consumers to pay higher prices, which plausibly stated a claim for unfair practices that violate state consumer protection laws. *Id.* at 1337. Although such allegations made preemption inappropriate in the EpiPen case, such allegations remain absent in this case.

In this case, Plaintiffs' complaint includes allegations slamming the prescription drug market generally and railing against the high cost of prescription drugs and the impact upon consumers (particularly relative to the payouts to pharmaceutical executives), but, in contrast to the plaintiffs in the EpiPen litigation, Plaintiffs here do not allege that AbbVie engaged in racketeering or took any action to shut out competition in the market in violation of the antitrust laws. Indeed at least two of the named Plaintiffs found and used biosimilar alternatives to Humira

in the market. Nor do Plaintiffs allege that AbbVie misled consumers or otherwise spread false information about competitors or pricing (or anything else, for that matter). On the contrary, Plaintiffs allege that AbbVie publishes its list prices and charges those prices as published; Plaintiffs simply claim the list prices are too high to be fair. And because AbbVie's ability to set its prices stems from its patent rights, patent law remains central to the case. In short, *In re: EpiPen* bolsters this Court's preemption findings.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss, [54], and dismisses all of Plaintiffs' claims. Although Plaintiffs have had one opportunity to amend, they did so previously without the benefit of any discussion or analysis concerning the sufficiency of their allegations. As a result, the Court declines AbbVie's invitation to find further amendment futile and dismisses the claims today without prejudice. *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). If, consistent with their obligations under Rule 11, Plaintiffs can amend any of their claims to cure the deficiencies noted above, they may file an amended complaint by February 11, 2026. If Plaintiffs decline to amend, the Court will dismiss the case.

Dated: January 14, 2026                           Entered:

John Robert Blakey
United States District Judge

21